IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ROBERT AVERY**                                                                      **PLAINTIFF**
**ADC #652373**

**v.**                                      **Case No.: 4:22-CV-00560-LPR**

**ASA HUTCHINSON, et al.**                                                    **DEFENDANTS**

<u>**ORDER**</u>

Plaintiff Robert Avery is a prisoner in the custody of the Arkansas Division of Correction. On July 5, 2022, Mr. Avery filed his Amended Complaint, which is the operative Complaint in this case.[1] In the Amended Complaint, Mr. Avery says that he anticipates receiving $1,400 and $1,800 in COVID-19 stimulus funds from the IRS "soon."[2] On August 4, 2022, Mr. Avery received a $624.90 check from the IRS, which both sides seem to agree represents a $600 stimulus payment plus $24.90 in interest.[3] An Arkansas statute, Act 1110 of 2021, instructs Defendants (state prison officials) to confiscate Mr. Avery's stimulus funds.[4] Act 1110 tells Defendants to use the confiscated funds to pay off any outstanding court fines, fees, costs, and restitution owed by Mr. Avery.[5] Then, as Act 1110 is currently enforced, any remaining funds go to Mr. Avery.[6]

---

[1] Mr. Avery's Amended Complaint was filed on July 5, 2022, but the Amended Complaint itself is dated June 26, 2022. Am. Compl. (Doc. 6) at 1, 12.

[2] *Id.* at 5.

[3] *See* Mot. for TRO (Doc. 15) at 1; Ex. 1 (Goldman Aff.) to Defs.' Resp. to Pl.'s Mot. for TRO (Doc. 17-1) ¶¶ 5–14 & p. 4.

[4] Ark. Code Ann. § 12-29-120.

[5] *Id.*

[6] Act 1110 requires Defendants to deposit the remaining stimulus funds "in equal parts to" the state prison system's general operating account and "[a]n inmate welfare fund . . . ." *Id.* § 12-29-120(d). But this Court (in another lawsuit) permanently enjoined that practice because it violates the Takings Clause and the Due Process Clause of the United States Constitution. *See Hayes v. Graves*, No. 4:21-cv-00347, 2022 WL 822881 (E.D. Ark. Mar. 16, 2022). Accordingly, a prisoner is entitled to any funds leftover after paying that prisoner's court fines, fees, costs, and restitution. *Id.*

Mr. Avery owes (at least) $1,720 in fines and fees.[7]  These financial obligations flow from a plea agreement that Mr. Avery entered into with the State of Arkansas.[8]  Under the plea agreement, Mr. Avery doesn't have to pay the fines and fees until he is released from prison.[9]  And even then he is only required to pay $55 each month.[10]  Mr. Avery says that his plea agreement with the State of Arkansas (including the $55/month payment schedule) is a valid and enforceable contract protected by the Contracts Clause of the United States Constitution.[11]  So, as he sees it, Act 1110 unconstitutionally "impair[s] the Obligation of Contracts" by forcing him to pay his fines and fees in a lump sum before he is released from custody.[12]

Mr. Avery has asked this Court for a preliminary injunction that prohibits Defendants from using Mr. Avery's stimulus funds to pay the fines and fees flowing from the plea agreement.[13]  Defendants have responded to Mr. Avery's Motion.[14]  After reviewing the parties' arguments and the relevant caselaw, the Court has determined that a hearing is unnecessary.[15]  For the reasons provided below, Mr. Avery's Motion is DENIED.

## DISCUSSION

Mr. Avery's Motion requires the Court to consider the following factors: (1) the threat of irreparable harm to Mr. Avery absent a preliminary injunction; (2) the balance between the likely

---

[7] *State v. Avery*, 04CR-18-487, Aug. 6, 2018 Sentencing Order, at 3. Mr. Avery incorporates this Sentencing Order into his Amended Complaint.  Am. Compl. (Doc. 6) at 2.

[8] Am. Compl. (Doc. 6) at 2.

[9] *Id.*; *see also State v. Avery*, 04CR-18-487, Aug. 6, 2018 Sentencing Order, at 3.

[10] Am. Compl. (Doc. 6) at 2; *see also State v. Avery*, 04CR-18-487, Aug. 6, 2018 Sentencing Order, at 3.

[11] Am. Compl. (Doc. 6) at 3–4; Mot. for TRO (Doc. 15) at 2.

[12] U.S. Const. art. I, § 10; Mot. for TRO (Doc. 15) at 2.

[13] Mot. for TRO (Doc. 15).

[14] Defs.' Resp. to Pl.'s Mot. for TRO (Doc. 17).

[15] *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) (stating that a preliminary-injunction hearing is "required . . . only when a material factual controversy exists").

harm to Mr. Avery in the absence of a preliminary injunction and the likely harm to Defendants from a preliminary injunction; and (3) whether Mr. Avery is more likely than not to prevail on the merits.[16]  The Court will assume that the irreparable-harm and balance-of-harm factors are heavily in Mr. Avery's favor.[17]  Still, Mr. Avery isn't entitled to a preliminary injunction.  That is because Mr. Avery has essentially no shot at succeeding on the merits of his Contracts Clause claim.  Here's why.

*First*, Mr. Avery's claim requires his plea agreement to be a valid and enforceable contract. That's a problem because the Eighth Circuit has said multiple times that "plea agreements 'are not contracts . . . .'"[18]  It's true that plea agreements are "generally interpret[ed] . . . according to basic principles of contract law."[19]  But the Eighth Circuit has made clear this simply means the method of interpreting one type of document (a contract) can be helpful when interpreting other, similar

---

[16] *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  There are two things worth noting about the preliminary-injunction standard.  *First*, in *Dataphase*, the Eighth Circuit outlined a total of four factors, with the fourth factor being whether a preliminary injunction would favor the public interest.  *Id.*  But the public-interest and harm-to-defendant factors merge when the plaintiff seeks to enjoin governmental action.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  *Second*, the "more likely than not to prevail on the merits" test is a step above the "familiar 'fair chance of prevailing' test" from *Dataphase*.  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc).  This heightened burden is appropriate here because Mr. Avery seeks to enjoin enforcement of a state statute.  *Id.*

[17] Mr. Avery certainly faces irreparable harm.  Given the several immunity defenses available to Defendants, Mr. Avery will have no way to recover his stimulus funds if Defendants confiscate and disburse those funds pursuant to Act 1110.  *See Lamar v. Hutchinson*, No. 4:21-cv-00529, 2021 WL 4047158, at *13–15 (E.D. Ark. Sept. 3, 2021) (discussing another Act 1110 plaintiff's showing of irreparable harm).  And the balance-of-harms factor also favors Mr. Avery.  Under a preliminary injunction, Defendants would simply be required to hold Mr. Avery's funds in the sequestered bank account for a longer time than they originally intended.  *See Hayes*, 2022 WL 822881, at *13; Ex. 1 (Goldman Aff.) to Defs.' Resp. to Pl.'s Mot. for TRO (Doc. 17-1) ¶ 15.  Defendants (and the State of Arkansas) would of course suffer an additional harm—the delayed enforcement of a duly enacted statute.  *See Rounds*, 530 F.3d at 732.  But that harm is applicable to every preliminary-injunction motion in which a plaintiff seeks to prevent state officials from enforcing a statute.  *Id.*  And that harm is largely accounted for by the heightened showing required of a plaintiff to satisfy the success-on-the-merits prong.  *See id.* (quoting *Able v. United States*, 44 F.3d 128, 131 (8th Cir. 1995)) ("[A] more rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'").  In any event, the relative weight of harms is still in favor of Mr. Avery.

[18] *United States v. Ritchison*, 887 F.3d 365, 369 (8th Cir. 2018) (quoting *United States v. Olesen*, 920 F.2d 538, 541 (8th Cir. 1990)).

[19] *Id.*

types of documents (plea agreements).[20]  It doesn't mean plea agreements are contracts.  They aren't, at least not in the Eighth Circuit.

*Second*, Mr. Avery's claim clearly fails even if his plea agreement is a contract.  Mr. Avery has to show that Act 1110 "substantially impairs a contractual relationship . . . ."[21]  The Eighth Circuit has said that "[a] state's interference with a minor contractual provision is not a substantial impairment" for purposes of the Contracts Clause.[22]  And the payment schedule (i.e., the timing of the payments) in the plea agreement is a minor provision.  It is far more procedural than substantive—it simply tells the parties to the plea agreement how to carry out the fines-and-fees part of the agreement.  Act 1110 neither changes the amount of money Mr. Avery owes under the plea agreement, nor requires Mr. Avery to serve additional prison time based on the criminal charges that the plea agreement resolved.  Act 1110's effect is limited to creating a small exception to the payment schedule for a specific category of windfall funds.  In short, Act 1110 does not "undermine[] the contractual bargain" in any way that can be described as "substantial."[23]

## CONCLUSION

For the reasons provided above, the Court DENIES Mr. Avery's request for a preliminary injunction.

IT IS SO ORDERED this 22nd day of September 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[20] *Id.*

[21] *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022).

[22] *Id.* (citing *Sveen v. Melin*, 138 S. Ct. 1815, 1824 (2018)).

[23] *Id.*